**NOT FOR PUBLICATION**

| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| In Re:<br><br>Herbert M. Degan and Laida K. Degan,<br><br>       Debtors. |
| Jason P. Flood,<br><br>       Plaintiff<br><br>v.<br><br>Herbert M. Degan and Laida K. Degan,<br><br>       Defendants. |

**Order Filed on January 9, 2015
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

Case No.: 13-34278 -ABA
Adv. No.: 14-1192-ABA
Chapter: 7
Judge:  Andrew B. Altenburg, Jr.

## MEMORANDUM DECISION

**DATED: January 9, 2015**

_/s/ Andrew B. Altenburg, Jr._
Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

## **FINDINGS OF FACT**

Plaintiff Jason P. Flood has sought a denial of discharge the Debtors Herbert Degan and Laida Degan (collectively or singularly, the "Debtors") under 11 U.S.C §727(a)(4)(A). Under this Section, a debtor is ineligible for a discharge if he or she knowingly and fraudulently, in or in connection with the case made a false oath or account. *Id*. Plaintiff alleges that the Debtors violated §727(a)(4)(A) by submitting a false bankruptcy petition, schedules and statement of financial affairs (collectively, the "Petition") to the court which failed to disclose numerous assets and interests. The Debtors counter by stating that they did not know their statements to be false nor did they intend to deceive the court and in fact, prior to the Section 341(a) Meeting of Creditors (the "341 Meeting"), they met with their counsel and discussed that it was necessary to amend their Petition. This has not been disputed and has been confirmed by the Debtors' counsel. In addition, both counsel to the Plaintiff and the Debtors confirmed that at the start of the 341 Meeting, the Debtors advised their chapter 7 trustee that there would be an amendment to the Petition. The exact content of the proposed amendment is in dispute. Plaintiff claims that prior to the 341 Meeting the Debtors only intended to add their interest in G2 Areo Group LLC ("G2") to their Petition. The Debtors assert that they contemplated adding more than the G2 interest prior to the 341 Meeting. Following the 341 Meeting, the chapter 7 trustee further conducted an examination of the Debtors under Fed. R. Bankr. P. 2004 at which time Plaintiff appeared. While the chapter 7 trustee initially sought an extension of time to object to the Debtors' discharge, he ultimately did not file an objection to discharge nor seek to intervene in the current Adversary Proceeding.

Debtor Laida Degan is the sole owner of Heads Up Advertising, a company formed on behalf of the Debtors by an accountant. Although Debtor Laida Degan was the sole owner, she credibly testified, and Plaintiff offered no evidence to the contrary, that she was not involved with and was unfamiliar with the day-to-day operations of Heads Up Advertising. She was generally familiar with the business and may have known of transactions from time to time, but nothing was produced to show that she participated in any way in the business. Instead, it was Debtor Herbert Degan who ran the day-to-day operations of the business.

It appears from the Exhibits submitted by the Debtors, which were identical to Exhibits attached to Plaintiff's complaint, that Debtor Herbert Degan was or is the owner of the following aircraft: a 1987 Acro-Sport 2 (the "Acro"); 1950 Piper Pacer PA-20 N7001K (the "Piper"); a 1976 Pitts Special S-1S (the "Pitts"); a 1974 Bellanca Citibria 7GCBC N86883 (the "Citibria"); a 1974 Bellanca Scout 8GCBC N87020 (the "Scout"); and a 1953 Taylor-Craft 15A N23JW (the "Taylor"). The Citibria was listed on Schedule B of the Petition with a value of $5,500. The Taylor was listed with a value of $5,000.

It is undisputed that prior to the filing of the Petition, Debtor Herbert Degan attempted to sell assets under different names. Debtor Herbert Degan acknowledged this fact and explained that he used different names because he did not want to give out his real name and in order to understand why a person may be calling him. Debtor Herbert Degan admitted that he attempted to sell his home and an airplane hangar for $525,000. On Schedule A to the Petition, the home

was listed at a value of $350,000.00. Plaintiff did not produce any evidence to refute the value of the home as set forth on Schedule A.[1]

Plaintiff was present at the 341 Meeting of Creditors and questioned the Debtors about purported assets missing from the Petition - specifically, a boat, recreational vehicles, and a camper/RV. The Debtor did not deny that they owned these assets.

Subsequent to the 341 Meeting of Creditors, the Debtors amended Schedules B and C to the Petition as well as their Statement of Financial Affairs. The amendments reflect the Debtors' interest in G2. The amendments also reflect additional assets including an ATV, 2 storage trailers, a BMW motorcycle, a camper, a boat, banner equipment, 3 tractors and a hot tub. The total undisputed value of the added assets were $6,276. The Debtor completely exempted all of the additional assets. *See* Debtors' Exhibit D-1. No objections to the value of or exemption of the additional assets was made. The amendment to the Statement of Financial Affairs reflected a transfer of the Pitts to a third party. *See* Debtors' Exhibit D-5.

The parties agreed that Debtor Herbert Degan was a 1/3 owner in G2. G2, not Debtor Herbert Degan individually, owns a leasehold interest for hangar space located at the Woodbine Airport. Debtor Herbert Degan testified that from time to time he received rent for other parties' use of the hangar space. G2 was disclosed as an asset with the lease agreement for the hangar space at the airport was identified as part of that asset. *See* Debtors' Exhibit D-1. It was stated that the Debtors believed there was a value to the asset but were uncertain as to that value because the liabilities exceeded the assets. Nevertheless, the Debtors assigned a value of $1 to reflect a value for the asset.

Except as set forth below, Plaintiff does not contend, and has not shown, that any other assets or interests are missing from the Petition and any amendments thereto.

Plaintiff called as one of his witnesses at trial Robert Salvato (the "Auctioneer") of Ac Auctions. Ac Auctions was retained by the chapter 7 Trustee to sell the Debtors' assets. In particular, Ac Auctions sought to sell the Debtors' interest in G2, the Citibria, the Taylor, the banner equipment, various tools and equipment, including an airplane lift, and the rights to the airplane hangar space. The Auctioneer, after receiving competing offers, was successful in obtaining a purchaser for all the assets. According to the sale documents, Plaintiff's Exhibit C-5, the value fixed for the hangar space was $35,000, $7500 each for the Citibria and the Taylor, and $2000 for the remaining equipment. The Auctioneer testified that the Debtors have fully cooperated with him in connection with his sale of the Debtors' assets on behalf of the chapter 7 Trustee.

---

[1] In addition, the chapter 7 Trustee issued a Notice of Abandonment in the bankruptcy case setting forth the value of the home at $350,000. No objection to abandonment was filed and, as a result, the estate's interest in the home has been abandoned.

## CONCLUSIONS OF LAW[2]

Under section 724(a)(4)(A), discharge will be denied if: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false;[3] (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000). As to the last element, the "issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors," but whether the subject "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Loyd v. Herchakowski (In re Herchakowski)*, No. 10-49287, 2013 WL 620291, at *5 (Bankr. D.N.J. Feb. 19, 2013) (citing 4 Collier on Bankruptcy, ¶ 727.04[1], at 727–59; *Cadle Co. v. Zofko (In re Zofko),* 380 B.R. 375 (W.D.Pa.2007)). The purpose of section 727(a)(4)(A) is to insure that the debtor has made "honest and accurate disclosure of his financial circumstances so the bankruptcy trustee and creditors have sufficient information for the proper administration of the chapter 7 case, without having to conduct costly investigations." *Id* (citing *Wachovia Bank v. Spitko (In re Spitko),* 357 B.R. 272, 312 (Bankr. E.D. Pa.2006)).

"In general, § 727 is to be construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Last*, 440 B.R. 642, 649 (Bankr. D.N.J. 2010) (citing *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993)). In an adversary proceeding, the plaintiff must prove its case by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

As to the application of the elements in this case, the parties agree that the statements for which the Plaintiff seeks a denial of discharge were made under oath. Thus, the first element is satisfied. At trial, arguments were heard on all allegations made under the Complaint. The court will address the pertinent remaining allegations set forth in the Complaint separately and directly but in no particular order.

---

[2] For the reasons set forth on the record at the conclusion of the trial, the court has already found that Plaintiff failed to meet his burden of proof as to any cause of action with regard to Debtor Laida Degan. Plaintiff was unable to produce any evidence, actual, circumstantial or otherwise, that Debtor Laida Degan had any knowledge of or recklessly disregarded the veracity of the statements alleged to be false and certainly no evidence was produced that showed that Debtor Laida Degan had the requisite fraudulent intent. The Plaintiff argued that her signing of the Petition was enough. Plaintiff's argument is misplaced. Nevertheless, to the extent the record needs to be supplemented with regard to its earlier decision concerning Debtor Laida Degan, the court's Findings of Fact and Conclusions of Law set forth herein are incorporated into that earlier decision.

[3] Reckless disregard for the truth or falsity of a statement is also sufficient to satisfy the knowledge prong. ." *Loyd v. Herchakowski (In re Herchakowski)*, No. 10-49287, 2013 WL 620291, at *3 (Bankr. D.N.J. Feb. 19, 2013) (citing *Neugebauer v. Senese (In re Senese),* 245 B.R. 565 (Bankr. N. D. Ill.2000)).

### A. Undisclosed Transfers/Assets

In paragraph 6 of the Complaint, the Plaintiff alleges that within 2 years of the bankruptcy filing, the Debtors transferred the Arco, the Piper and the Pitts to third parties. Accordingly, under Question 10 of the Statement of Financial Affairs, these transfers should have been disclosed. The Plaintiff alleges that since the Debtors failed to disclose the transfers in Question 10, the Debtors are ineligible for a discharge because they knowingly and fraudulently in the case made a false oath or account.

To support his position the Plaintiff notes the following transfers: the Acro to the Debtors' father on or about April 13, 2012; the Piper to Jersey Devil Dusters, LLC on or about February 6, 2012; and the Pitts to Mark Gonzalez on or about September 26, 2012. In support, of his position, Plaintiff relied on unathenticated documents purported to be from the FAA which set forth the dates of the alleged transfers. *See* Debtors' Exhibits D-2 through D-4.[4] Unfortunately, it was not established whether these Exhibits reflect a date of transfer or simply a date on which the airplanes were ultimately registered so the court must consider other circumstances.

At trial, the Debtors explained that they were requested to supply information for any and all transfers within one year of the bankruptcy filing. Debtors' counsel confirmed that this was the instruction his office provided to the Debtors. Because all three transfers were outside the one year, the Debtors did not supply the information.

As to the Acro, the Debtors testified that while the registration reflected a transfer in 2012, in reality, the Acro was sold and physically transferred to his father out of state in 2007 or 2008. The Debtors state that they received fair value for the transfer. As a result of the physical transfer, the Debtor believed that he transferred the Acro to his father more than 2 years before the bankruptcy filing. As to the Piper, Debtors testified that while the registration reflected a transfer in early 2012, it may have actually been transferred prior to or just at the two year mark. The Debtors state that they received fair value for the transfer. Nothing in the Plaintiff's evidence refutes these statements. As to the Pitts, the transfer was disclosed on the amended Schedule B to the Petition.

The court finds the Debtors' testimony credible. They relied on instruction of counsel and provided information in accordance therewith.[5] They also believed that the transfers of the Acro

---

[4] These Exhibits were identical to the Exhibits A, B and C to the Plaintiff's Complaint although the Debtors used them as evidence.

[5] While "reliance on the advice of counsel is rarely a defense to a [section] 727(a)(4)(A) action[, t]he cases distinguish between good faith reliance on the advice of counsel, which in certain circumstances may negate an intent to defraud under [s]ection 727(a)(4)(A), and reckless indifference to the truth. The good faith reliance defense requires full disclosure of all relevant facts to the attorney, and reasonable advice from counsel." *Herchakowski*, 2013 WL 620291, at *4. In our case, Debtor Herbert Degan credibly testified at trial that he provided his attorney with all the information his attorney requested regarding transfers within one year of the bankruptcy filing. The fact that his attorney believed only transfers within a year of the bankruptcy needed to be disclosed when in fact transfers within two years of the bankruptcy needed to be disclosed does not indicate that the Debtors acted in bad faith. It is certainly reasonable for a lay-debtor to rely on his or her attorney's advice as to disclosure timeframes. It is clear that the Debtors provided full disclosure to their attorney and reasonably relied on their attorney's advice as to what

and the Piper were outside the two year period when preparing the amendment. While technically the Debtors' statement as to Question 10 under oath was false, Plaintiff has not met its burden in showing that the Debtors knew their statement was false or made with reckless disregard or, more importantly, that the Debtors had the requisite fraudulent intent. The evidence produced simply does not support a finding of knowing or reckless intent to deceive. Moreover, the court, through its observation of the witnesses, believes that the Debtors believe that they made an honest and accurate disclosure of their financial circumstances through their initial filing, stated intention to amend and subsequent amendments.

Also in paragraph 6 of the Complaint, the Plaintiff alleges the Debtors made a false statement under oath by failing to disclose the loss and insurance recovery for the Scout which is the aircraft that was involved in the accident with the Plaintiff. Since this is a loss and not a transfer, Question 8 of the Statement of Financial Affairs, not Question 10, applies. That section requires a debtor to disclose all losses <u>within one year</u> immediately preceding the commencement of a case. The accident/loss occurred on August 2, 2011 and the Debtors testified, without contradiction, that the insurance proceeds were recovered a few months later and still in 2011. The Petition was filed on November 4, 2013. Therefore, the loss was not within one year immediately preceding the commencement of a case and consequently, no false statement was made.

In paragraph 11 of the Complaint, Plaintiff alleged that the Debtors owned hangar space at Woodbine Airport and this asset is not listed anywhere in the Petition. Plaintiff also argues that if the hangar is no longer owned by the Debtors, the transfer of property is not properly listed in the Petition. The allegation fails in respects. At trial, it was established that the Debtors do not individually own the hangar space rather, it is G2 which owns a leasehold interest in the hangar space. *See also,* Plaintiff Exhibit C-5. Because G-2 owns the leasehold interest in the hangar space, the hangar space was not required to be specifically disclosed on the Petition, however, the Debtors' interest in G2 was. It is undisputed that G2 was disclosed as an asset. Interestingly, as disclosed, the G2 asset reflects a lease agreement for the hangar space at the airport. *See* Debtors' Exhibit D-1. Accordingly, the Debtors were not required to specifically disclose the hangar space on Schedule B of their Petition (although arguably they did) nor were they required to disclose a transfer of that asset as suggested by Plaintiff. As a result, the Debtors made no false statement or omission with regard to the hangar space on the Petition.

### B. The Value of Assets Disclosed on the Petition

Plaintiff alleges that the values ascribed to various assets are too low, and therefore the statements as to the value of those assets are false, warranting a denial of discharge under section 727(a)(4)(A). Specifically, in paragraph 6 of the Complaint, the Plaintiff alleges that the Debtors' stated values of the Citibria and the Taylor were false. To support his position, Plaintiff introduced evidence that the purchase price and/or values assigned by the Debtors when trying to sell the aircraft were much higher than the values listed on the Petition. The Debtors adequately explained that they used prices they hoped to achieve, not necessarily prices they thought they could obtain and that the Petition reflected what they believed to be an appropriate value for the

---

items needed to be disclosed on their petition. To the extent their attorney improperly advised them, these Debtors should benefit from a reliance on counsel defense.

petition. Indeed, even the Plaintiff's own witness established values for the aircraft that were comparable to the values set forth on the Petition. No other evidence was produced to suggest that the Petition values were false or made with fraudulent intent. Moreover, the difference in the positions in value, one for sale and one for Petition purposes, is not material. The chapter 7 trustee was made aware of the assets and in fact was able to obtain a purchaser for those assets as a direct result of the Debtors' disclosure of same. The Debtors have fully cooperated with the Auctioneer. The purpose of section 727(a)(4)(A) is to insure that the debtor has made honest and accurate disclosure of his financial circumstances to the bankruptcy trustee. The fact that the assets were disclosed, in addition to the Auctioneer's obtained values, convinces the court that the Debtors were honest and accurate as to their valuation of the aircraft and no knowing or reckless false statement was made.

Plaintiff also alleges that the valuation of the home and the hangar on the Petition and amendment thereto are false in paragraphs 8 and 11 of his complaint. The Debtor Herbert Degan credibly testified that he was trying to hit a "homerun" when trying to sell the assets together for a high price. Plaintiff has produced no evidence to suggest that the value of the home, as set forth on Schedule A to the Petition as $350,000, is inaccurate. The fact that the chapter 7 trustee appears to have accepted the Debtors' value by issuing his Notice of Abandonment setting forth the value of the Debtors' home at $350,000 leads the court to conclude that the Debtors' statement as to the value of the home was not false.

Finally, the Debtors credibly testified that they knew there was a value to G2 but did not know its true value[6] and that is why a $1 value was assigned. Plaintiff has not established that there was a knowing or reckless fraudulent intent in providing a $1 value. Indeed, the Plaintiff's own expert testified that it took him some time to calculate what a good value would be. The fact of the matter is, the asset was disclosed and such disclosure provided the chapter 7 trustee with sufficient information for the proper administration of the chapter 7 case, without having to conduct costly investigations. The Debtors made no knowing or reckless statement with fraudulent intent and thus made no material statement as it related to the bankruptcy case. The Debtors disclosed an asset and acknowledged it had value. Plaintiff has failed to meet his burden in this regard.

### C. The Debtors' Income

In paragraphs 12 through 14 of the Complaint, the Plaintiff alleges that the Debtors have made false statements regarding their current income. Plaintiff alleges that the Debtors failed to disclose rental income from their rental of the hangar space and that the information contained on Schedule I of the Petition is inaccurate. Plaintiff argued that as a federal employee, Debtor Herbert Degan's income is a matter of public record, and it is actually almost $20,000 higher than what he listed on Schedule I to the Petition. To support his case, Plaintiff attempted to produce an unauthenticated print-out from the internet alleged to be proof of the Debtors' income. That document was never introduced into evidence. More importantly, Plaintiff failed to produce any evidence reflecting that the information contained on Schedule I was false. With the

---

[6] Indeed courts acknowledge the difficulty of valuing an ownership interest in a closely held corporation. *See In re Spitko*, 357 B.R. 272, 315 (Bankr. E.D. Pa. 2006); *In re Erdman*, 96 B.R. 978, 987 (Bankr. D.N.D. 1988).

discovery available, Plaintiff could certainly have availed himself to other sources to attack the accuracy of the Debtors' income set forth on Schedule I to the Petition. Not even a paystub to attack the accuracy of the information in Schedule I was produced. Instead, Plaintiff chose to rely only on an unauthenticated print-out from the internet which was never introduced into evidence. Nevertheless, in response to the Plaintiff's allegations, the Debtors credibly testified that they lumped all of his paycheck deductions, including federal income taxes, state income taxes, social security, health insurance contributions, mandatory pension contributions, and union dues, together when setting forth his allowed deductions. It was also stated that the Debtors supplied the chapter 7 trustee with copies of their paystubs and the trustee did not raise any issues in response.

As to the question of rent, the Debtors testified that they sporadically provided hangar space to third parties and sometimes collected rent in exchange. There was no consistent monthly tenant and they made no more than $3000 in the last year. This testimony was not refuted. More importantly, Plaintiff produced no evidence that showed consistent rental income or that, as of the date of the filing of the Petition, the Debtors were receiving rent.

In sum, Plaintiff failed to meet his burden that the Debtors provided a false statement as to their income listed on Schedule I of the Petition.

### D. Omissions from the Petition

In paragraphs 9 through 12 of the Complaint, Plaintiff alleges that he was present at the 341 Meeting and at that time asked the Debtors about various items omitted from the Petition. Plaintiff acknowledges that the Debtor Herbert Degan did not deny that he owned these assets. Debtors subsequently filed an amendment to Schedule B of the Petition setting forth the omitted assets. *See* Debtor's Exhibit D-1. At trial, Plaintiff confirmed that all the omitted assets were subsequently identified on the amendment to Schedule B and that he was unaware of any other omitted assets.[7]

While the court has concerns about the Debtors' omission of these assets, it has not been established that the omissions were fraudulent. In addition, the amendments reflect that the omitted assets have a total undisputed value of $6,276 which the Debtors completely exempted. No objections to the value or exemption of the omitted assets were made. Thus, the omitted assets are not material because they are of little value and produce no benefit to the estate. As a result, relief cannot be afforded under section 727(a)(4)(A) because the omission of the assets was not material and does not impact the estate.

During trial, Plaintiff explored other omissions he considered significant however, the court did not find those arguments persuasive nor did Plaintiff meet his burden as to the elements of 727(a)(4)(A).

---

[7] There was an issue raised as to an airplane lift that had not been listed but the Debtor Herbert Degan testified, albeit with confusion, that he considered the lift to be his father's. Certainly, it was not proven that the Debtors acted with the requisite intent in omitting this asset. What is clear to the court is that the lift was not hidden from the chapter 7 trustee and in fact is being sold as part of the sale agreement obtained through his Auctioneer. The court notes that Plaintiff's Exhibit C-5 does not assign a value to the lift, or at best the value is *de minimis*.

### E. Debtors' Pattern of Conduct

In paragraph 7 of the Complaint, Plaintiff alleges that he discovered that the Debtors were trying to sell items via the internet under a false name. Although the names were false, the phone numbers listed were that of the Debtors or their business. The Debtors confirmed this. The Plaintiff suggests that this shows a pattern of conduct to defraud creditors. The court assumes that the Plaintiff wishes it to consider this pattern as circumstantial evidence to find fraud. The court had the opportunity to observe the Debtors and believes they testified credibly in this matter. Moreover, Debtor Herbert Degan adequately explained his motivations for using pseudonyms while selling items in online marketplaces, namely, he highlighted the fact that the Plaintiff and the Plaintiff's family clearly were able to identify his posts despite his use of pseudonyms and that by using pseudonyms he was able to easily identify calls from potential buyers. Furthermore, it is apparent to the court that Herbert Degan goes by the name "Chip Degan," so using that name instead of his legal name in no way suggests a false motive. If the Debtors were attempting to mislead or defraud potential buyers, it does not make sense that they would include business and personal cell phone numbers on advertisements. Finally, to the extent the Plaintiff claims the Debtors acted with the intent to mislead the Plaintiff's family in particular, the testimony at trial establishes that both the Plaintiff's family and the Debtors regularly used the website in question to buy and sell airplanes and airplane parts and all the parties in question were aware of the others' active presence on the site. In light of these facts, and the fact that the Plaintiff did indeed recognize the Debtors' advertisements in spite of the fact that they did not always contain the Debtor Herbert Degan's correct legal name, it is unreasonable to conclude that the use of pseudonyms establishes a pattern of conduct to establish fraudulent intent.

## **CONCLUSION**

Based on the foregoing, the Complaint is dismissed as to Debtors Herbert Degan and Laida Degan. Counsel for the Debtors is directed to submit a form of order consistent with the court's findings.

The court reserves its right to supplement its findings of fact and conclusions of law.